The opinion of the court was delivered by
Manning, C. J.
Stephen-Anthanasiades claims a salary as professor of the Greek language in the Louisiana State University and Agricultural and Mechanical College. The relator is his assignee or agent/ The sum claimed is $3,785.61 for services rendered during 1872 — 1875 inclusive. The General Assembly appropriated $11,550.00 at its last session for the support and maintenance of the beneficiary cadets at the Louisiana State University in the year 1873 in accordance, the act says, with an act of the extra session of 1870. There is also alleged to be due that school $18,000.00 of accrued interest on the-Seminary Fund. The relator seeks to compel the Governor of the State, who is the President ex officio of the Board of Supervisors, to warrant in his favor upon either or both of these funds to pay his salary.
*712 This Seminary Fund arises from the sales of land donated by Congress for the support of a Seminary of Learning in this State. An institution existed here bearing that name, but it appears to have been changed to the Louisiana State University, which must not be confounded with the University of Louisiana. Another institution was called the Agricultural and Mechanical College, and these two were united or consolidated under the verbose designation above set out.
The Act consolidating or uniting these two separate institutions does not authorize or direct the Supervisors, or their President, to warrant for any of the debts of either of the corporations previously existing. The omission seems to have been studiously made, and we must infer that its object was to relieve the supervisors of the present Institution from the obligation of warranting for debts of a defunct corporation, of which they were presumably ignorant, and thus remit the creditors to their ordinary actions, in which the debt must be proven, and the adjudication of a court obtained thereon.
Even if this were not so, the appropriation made in 1879 must be of the revenues of 1873. The legislature has no authority to appropriate any portion of the revenues of 1879 to pay the expenses or to meet the deficiences of 1873, and unless there are funds in the treasury, derived from the revenues of 1873, or to be hereafter realized from those revenues, there will be no fund upon which to warrant.
But there is another ground fatal to the relator’s right to this writ. Be assumes that because Col. Boyd stated an account between the Institution and the professor, signing the same in his quality of Superintendent, that this is of itself conclusive evidence of the indebtedness of the Institution, and no inquiry of its correctness is needed or can be had. What law gave to the Superintendent the power to bind the Institution legally and irrevocably by his acknowledgment of an indebtedness ? Where does the statute impart to an account stated by him the quality of finality and completeness, so as to preclude all dispute of it by the Institution ?
The relator seems to have assimilated the conduct of the financial affairs of this Institution to the conduct of the same affairs of the State. Under the Act incorporating the “ Seminary of Learning,” and under the subsequent Act changing the name to the “State University,” the President or Yiee President could warrant, but because he was the officer designated to draw a warrant, was it ever supposed that he was bound to draw one for whatever sum the Superintendent might choose to recognise as a debt due by the institution ? The Auditor of Public Accounts of the State may be compelled to draw a warrant for fees which a judge and clerk certify to be correct and due, Parker v. Robertson, 14 Annual, 246, but that is because the law makes that certificate *713 conclusive evidence oí the debt. The same is true of the Comptroller of the city of New Orleans and for the same reason. Pinac v. Mount, 21 Annual, 352. But it will not be true of this Institution until the law imparts to a stated account of its Superintendent the same force, quality, and effect that is given to a certificate of those officers whose duties are adjudicated in the above decisions.
It follows therefore, even if the authority to draw was conferred upon the President by the Act of 1877, or if it was made his duty to draw warrants when money was to be obtained from the State treasury, he is not obliged to draw for any and every sum that the Superintendent may certify to be due, and therefore if he refuses to draw, he is not compellable by mandamus to do it. Nowhere, and under no circumstances, does any statute, incorporating or regulating this Institution under any of its Protean forms or numerous aliases, make the certificate of the Superintendent, or his stated account, full, final, and complete evidence of a debt of the Institution, and therefore parties who hold claims against it are not entitled to proceed to enforce their payment by a mandamus, as was done against the State or a municipal corporation in the cases cited by the relator.
Judgment affirmed.